

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 6, 1962

Mr. Richard L. Coffman                    Opinion No. WW-1301
Administrator
Texas Employment Commission    Re:  Compensation experience  to be
TEC Building                                       used under subsection 5(c)(4)
Austin, Texas                                      of Article 5221b, in the event
                                                          of an approved transfer of com-
                                                          pensation experience under sub-
                                                          section 5(c)(7) of said Article
                                                          with respect to acquisition on
                                                          a date subsequent to the October
                                                          1 computation date specified in
                                                          subsection 5(d) of said Article
Dear Mr. Coffman:                            under the stated facts.

          Your request for an opinion presents the following
fact situation:

          On December 31, 1960, a subject employer, hereinafter
called Employer A, acquired the businesses and assets of two
other (subsidiary) corporations, hereinafter called Employers B
and C, respectively, through a merger and liquidation effective
that date.

          The 1961 benefit wage ratio of Employer A is 8.5%, based
upon compensation experience of this corporation, exclusively, for
the 36-month period ended September 30, 1960.  (Three-year benefit
wages $3,047,317 divided by 3-year wages $36,248,580.)  The bene-
fit wage ratio, 8.5%, modified by the State Experience Factor,
yields a tax rate of 1.6% for 1961.

          After Employer B and Employer C were merged into Em-
ployer A (the parent) on December 31, 1960, Joint Applications
for Transfer of Compensation Experience from Employers B and C
to Employer A were promptly filed on or about January 30, 1961,
as contemplated by subsection 7(c)(7) of the Texas Unemployment
Compensation Act (Article 5221b-5(c)(7) V.C.S.).  Both of these
joint applications were approved by the Texas Employment Commission
on March 8, 1961, and the compensation experience of the two pre-
decessor corporations was transferred to the compensation exper-
ience account of the successor, Employer A, effective as of the
date of the merger and acquisition, December 31, 1960.

          Employer B (now liquidated) had a benefit wage ratio of
4.4% based upon benefit wages totaling $338,424 and taxable wages
totaling $7,730,987 for the 36-month period ended September 30, 1960.

Thus, this corporation would have a tax rate of 0.8% for 1961 if its operations and employment had continued after December 31, 1960.

Employer C (now liquidated) had a benefit wage ratio of 1.9% based upon benefit wages totaling $2,173 and taxable wages totaling $114,807 for the 36-month period ended September 30, 1960. Thus, this corporation would have a tax rate of 0.4% for 1961, if it had continued operations and employment beyond December 31, 1960.

The compensation experience generated by the two predecessor corporations during the three-year period preceding October 1, 1960, was relatively more favorable than the compensation experience generated by the successor Employer A during the same period. All of the compensation experience of Employer B and Employer C, including compensation experience for the fourth calendar quarter of 1960, has been transferred to the experience rating account of Employer A as of December 31, 1960, the effective date of the acquisition by merger and liquidation.

While the benefit wage ratio of Employer A standing alone is 8.5%, if the compensation experience of the predecessor corporations were to have been combined with the compensation experience of Employer A, the 1961 tax rate computation for the combined companies would have produced a benefit wage ratio of 7.7% based upon total benefit wages of $3,387,914 and wages totaling $44,094,375 for the 36-month period preceding October 1, 1960. This computation, had it been made, would have yielded a 1961 tax rate of 1.4% based upon the combined compensation experience.

You have requested an opinion concerning whether the 1961 tax rate for the surviving parent corporation, Employer A, should be computed on the basis of the aggregate compensation experience of all three employers combined retroactively as of October 1, 1960.

Section 7(d) of the Texas Unemployment Compensation Act (Art. 5221b-5(d), V.C.S.) expressly provides, "The computation date for all experience tax rates shall be as of October 1 of the year preceding the calendar year for which such rates are to be effective . . .". (Emphasis supplied.) "As of" means "as if it were." United States v. Monroe-Van Helms Company, 243 F.2d 10, 13 (C.C.A. 5th 1957), Horwitz v. New York Life Insurance Company, 80 F.2d 295 (C.C.A. 9th 1935). Therefore, although the computation is actually made sometime subsequent to October 1 as a matter of administrative necessity, it must be performed as if it were October 1 and can only take into consideration the fact situation existing as of that date. City of Twin Falls v. Koehler, 63 Idaho 562, 123 P.2d 715 (1942).

The computation date for experience tax rates was changed to October 1 in an enactment declared to be "necessary and indispensable to the proper and efficient administration of the Texas Unemployment Compensation Act." Acts 1957, 55th Leg., p. 1359, ch. 460, Sec. 16. Previously, the computation date was January 1, which created serious administrative problems since the tax rates became effective on the same date. Acts 1955, 54th Leg., p. 399, ch. 116, Sec. 5; Acts 1949, 51st Leg., p. 294 ch. 148, Sec. 5E; Acts 1936, 44th Leg., 3rd C.S., p. 1993. When the rates were computed as of January 1, it was necessarily long after January 1 (and after the rates were already in effect) before the necessary information could be gathered, rates computed and employers notified. Computation of experience tax rates under the Texas Unemployment Compensation Act is not a simple matter, since each tax rate must take into consideration the amount of benefit wages paid by employers and the amount of benefits paid out to unemployed individuals on a state-wide basis during a stated one-year period, as well as the individual employer's wage and compensation experience during a three-year period. See Art. 5221b-5(c), V.C.S. Obviously, it contributed a great deal to the orderly and efficient administration of the Act for the legislature to change the computation date to October 1, allowing the Texas Employment Commission ample time to compute experience tax rates before they went into effect. The change made it possible for the Commission to schedule its work in a more efficient manner and enabled employers to plan their business activities for the coming year on the basis of fixed tax rates.

If experience tax rates were re-computed subsequent to October 1 when business acquisitions occur during the last three months of the year, the purpose of the legislature in providing for "all" rates to be computed as of October 1 would to some extent be frustrated. Records of the Texas Employment Commission reveal that several hundred such acquisitions occur during the last three months of each year. Since rates are now computed in the weeks immediately after October 1, a great many rates would have to be re-computed, and, in many cases, neither the employers concerned nor the Texas Employment Commission would have the benefit of knowing what the tax rates would be before they went into effect on January 1.

It should be noted that business acquisitions do not always result in lower rates; in fact, the smaller businesses being acquired frequently have less favorable compensation experience than the parent company. Thus, in many instances the successor employer does not have the same interest in obtaining the benefit of the predecessor's compensation experience at the earliest possible date as does Employer A in this case.

It was clearly the intention of the legislature to make the computation date for all experience tax rates October 1, for the plain words of the statute so state. A clear and unambiguous law should be enforced as it reads. Franklin v. Pietzsch, 334 S.W.2d 214 (Civ. App., 1960, error ref. n.r.e.), Gately v. Humphrey, 151 Tex. 588, 254 S.W.2d 98 (1952). As was stated in State Board of Insurance v. Betts, 158 Tex. 612, 615, 315 S.W.2d 279, 281 (1958), "When we abandon the plain meaning of words, statutory construction rests upon insecure and obscure foundations at best."

The question has been raised as to whether Section 7(d) of the Texas Unemployment Compensation Act is inconsistent with Subsection 7(c)(7), (Art. 5221b-5, Subsection (c)(7) and (d), V.C.S.). Section 7(c)(7) of the Act reads in part as follows:

"If an employing unit acquires all or a part of the organization, trade or business of an employer, such acquiring successor employing unit and such predecessor employer may jointly make written application to the Commission for that compensation experience of such predecessor employer which is attributable to the organization, trade or business or the part thereof acquired to be treated as compensation experience of such successor employing unit. . . .

"If the application for transfer of experience is approved and the successor employing unit was an employer immediately prior to the acquisition, such successor shall pay contributions from the date of the acquisition until the end of the calendar year in which the acquisition occurred at the rate applicable to the successor on the date of the acquisition. . . ." (Emphasis supplied.)

The above statute deals only with the tax rate of the successor employer during the remainder of the calendar year following an acquisition. It is silent as to the tax rate thereafter. Employer A contends that it can reasonably be inferred that the legislature intended for a new tax rate based upon the combined compensation experience of the employers to become effective after the expiration of the year in which the acquisition occurred because this portion of the statute only provides for the old rates to remain effective until the end of the year. However, this inference is countered by the express provisions of Section 7(d) of the Act, which was enacted subsequent to the portion of Section 7(c)(7) in question, quoted above. Acts 1957, 55th Leg., p. 1355, ch. 460, Sec. 4; Acts 1949, 51st Leg., p. 293, ch. 148, Sec. 5D. It should be noted that the statute provides for only one computation of experience tax rates each year and expressly commands that the computation date for all such rates "shall be as of October 1." Art. 5221b-5(d), V.C.S.

Mr. Richard L. Coffman - Page 5 - (WW-1301)

Whenever possible, statutes and parts of statutes should be construed so as to eliminate conflict between their various provisions. If Section 7(c)(7) of the Texas Unemployment Compensation Act were construed as requiring a re-computation of experience tax rates to take into account business acquisitions occurring during the last three months of the year, it would be in direct conflict with and repugnant to Section 7(d) of the Act. Furthermore, since Section 7(d) was amended to its present form subsequent to the enactment of the salient portion of Section 7(c)(7), if the two sections conflict it is Section 7(d) which must prevail. 39 Tex. Jur. 139, Statutes, Sec. 74.

The long-continued construction given these statutes by the Texas Employment Commission is entitled to be given weight when consideration is being given to their proper meaning and effect. Reed v. Triplett, County Judge, et al., 232 S.W.2d 169 (Civ. App. 1950, error ref.), Gulf, C. & S. Ry. Co. v. City of Dallas, 16 S.W.2d 292 (Comm. App., 1929), Harris County v. Crooker, et al., 112 Tex. 450, 248 S.W. 652 (1923). Under both the old law (when the computation date was January 1) and under the statute now in effect the Commission has consistently refused to re-compute experience tax rates to take into account business acquisitions occurring subsequent to the computation date.

Since the computation date for experience tax rates was changed to October 1 in 1957 many hundreds of rates have been computed, and thousands of dollars in taxes have been collected on the basis of such rates, in cases involving business acquisitions occurring during the last calendar quarter of the year. If the Commission's interpretation of the statute were found to be erroneous at this late date, all such rates would have to be re-figured. Almost all of the rates would be changed. In many cases additional taxes would have to be paid; in other cases taxes would have to be refunded. These circumstances give added weight to the view that the Commission's interpretation of the statute should not be overruled without compelling reasons.

Finally, the legislature has met in two regular sessions and numerous called sessions since the computation date for experience tax rates was changed to October 1, yet it has not disturbed the Commission's construction of the statute. Legislative sanction of such construction may therefore be presumed. 39 Tex. Jur. 175, Statutes, Sec. 92.

SUMMARY

An acquisition subsequent to the October 1 computation date specified in subsection 7(d) of the Texas Unemployment Compensation Act

does not affect the experience tax rate
resulting from such computation.

Sincerely yours,

WILL WILSON
Attorney General of Texas

By Ernest Fortenberry
Assistant

EF/fb

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

F. C. Jack Goodman
Thomas Burrus
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL
BY: HOUGHTON BROWNLEE, JR.